# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**PERRY SALAAM o/b/o S.S., a minor**
    **Plaintiff,**

  v.                                              Case No. 08-C-0238

**MICHAEL J. ASTRUE,**
**Commissioner of the Social Security Administration**
    **Defendant.**

## DECISION AND ORDER

Plaintiff Perry Salaam filed an application for supplemental security income ("SSI") benefits on behalf of his minor child, S.S. The Social Security Administration ("SSA") denied the application, as did an Administrative Law Judge ("ALJ") after a hearing. The SSA's Appeals Council then denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner of the SSA. See McCarty v. Astrue, 528 F.3d 541, 543 (7th Cir. 2008). Plaintiff now seeks judicial review of that decision pursuant to 42 U.S.C. § 405(g).

## I. APPLICABLE LEGAL STANDARDS

### A. Standard of Review

Under § 405(g), the district court deferentially reviews the ALJ's factual determinations, affirming if the decision is supported by substantial evidence in the record. Craft v. Astrue, No. 07-2303, 2008 WL 3877299, at *3 (7th Cir. Aug. 22, 2008). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Id. Thus, where conflicting evidence would allow reasonable minds to differ as to whether a claimant is entitled to benefits, the responsibility for that decision falls on the ALJ. Binion v.

Chater, 108 F.3d 780, 782 (7th Cir. 1997).

However, in order to take advantage of this deferential standard, the ALJ's decision must demonstrate the path of her reasoning. Neave v. Astrue, 507 F. Supp. 2d 948, 952 (E.D. Wis. 2007). While this does not mean that the ALJ must evaluate in writing every piece of evidence in the record, her decision must be sufficient to assure the court that she considered the important evidence. Rohan v. Chater, 98 F.3d 966, 971 (7th Cir. 1996). Even if the evidence in the record appears to support the decision, the court cannot uphold it if the ALJ failed to build an accurate and logical bridge between the evidence and the result. Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996). Finally, because the court reviews legal determinations de novo, Craft, 2008 WL 3877299, at *3, if the ALJ commits an error of law the court "may reverse without regard to the volume of evidence in support of the factual findings." White v. Apfel, 167 F.3d 369, 373 (7th Cir. 1999). Failure to comply with the SSA's regulations and rulings for evaluating disability claims constitutes legal error permitting reversal under § 405(g). See Prince v. Sullivan, 933 F.2d 598, 602 (7th Cir. 1991).

**B.     Disability Standard**

The SSA applies a sequential three-step test for determining whether a child-claimant is disabled. Under this test, the ALJ must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; and (3) if so, whether the impairment meets, equals or functionally equals an impairment listed in SSA regulations as being presumptively disabling. 20 C.F.R. § 416.924. If the ALJ finds at step three that the impairment does not medically meet or equal a Listing, she must determine whether the child's impairment results in limitations that functionally equal the Listings. 20 C.F.R. § 416.926a(a). This is accomplished by evaluating the claimant's degree of limitation

2

Case 2:08-cv-00238-LA   Filed 09/15/08   Page 2 of 13   Document 18

(i.e., extreme, marked, less than marked, or no limitation) in six "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. § 416.926a(b)(1). If the claimant has "marked" limitations in two domains or an "extreme" limitation in one, she is deemed disabled. § 416.926a(a).

## II. FACTS AND BACKGROUND

### A. Application and Administrative Proceedings

Plaintiff filed an application for SSI benefits on behalf of S.S. on December 27, 2004, based on a learning disability and depression. (Tr. at 74.) The SSA denied the application initially (Tr. at 43) and on reconsideration (Tr. at 35). Plaintiff requested a hearing before an ALJ (Tr. at 32), and on February 16, 2007, he and S.S. appeared with counsel before ALJ Margaret O'Grady (Tr. at 274).

### B. Hearing Testimony

S.S. testified that she was fourteen years old and lived with her father and aunt. (Tr. at 280.) She stated that she could dress herself and care for her personal hygiene, and took a bus to school, where she attended the 8th grade. (Tr. at 281.) She said that she was not doing very well in school and received B's, C's and D's on her report card. (Tr. at 282.) She stated that she got along with her classmates and "sometimes" got along with her teachers. (Tr. at 282.) She testified that she had never been suspended but did receive detention once or twice for talking. (Tr. at 284.) She denied participating in sports or clubs at school, but did report an after-school activity called "Pearls for Girls." (Tr. at 284.) She stated that she sometimes stayed after school to get help with her work. (Tr. at 285-86.) Otherwise, she went home and

3

watched TV, read or played with her cousin. (Tr. at 286-87.) On weekends, she went to the mall with a friend or to her friend's house. (Tr. at 287.) In the summer, she went skating and to the park. (Tr. at 301.)

S.S. denied taking any medications or having any pain in her body. (Tr. at 288-89.) She also denied being unable to do things others her age could do but stated that she was in one special class at school. (Tr. at 289.) She stated that she wished she had more time in her IEP class because she had trouble in school. (Tr. at 290-91.) She also stated that she sometimes forgot to hand in her homework (Tr. at 292) and that she needed reminders to clean her room (Tr. at 296). She testified that she helped around the house, dusting and cleaning. (Tr. at 299.)

Plaintiff testified that S.S.'s school performance was lacking, and she did not complete her assignments. (Tr. at 305.) He stated that she received B's and C's on her report card, had not repeated any grades, and got along well with teachers and classmates. (Tr. at 306.) Aside from one incident on the bus, she had not received significant discipline. (Tr. at 306-07.) Plaintiff testified that S.S. participated in no school sports or clubs but did enjoy swimming and tennis after school. (Tr. at 307.) He stated that she took no medications and was able to care for her personal needs. (Tr. at 308.) She also helped out around the house, washing dishes, cleaning and vacuuming (Tr. at 309) but didn't do a very good job (Tr. at 314). If confronted about it, she would cry. (Tr. at 315.)

Plaintiff stated that S.S. saw a psychiatrist, Dr. Cardassi, and previously saw a therapist, whom she did not like. (Tr. at 311-12.) When asked why he believed S.S. to be disabled, plaintiff stated that she had a learning disability since second grade. (Tr. at 313.)

4

**C.  School Records**

**1.  IEP's**

The record contains several Individualized Education Programs (IEP's) devised by the Milwaukee Public Schools in connection with S.S.'s learning difficulties.  S.S.'s 3rd grade IEP indicated that she was pleasant and worked hard when focused but appeared to have delays in her ability to store and retrieve information.  She tested at a 2.8 grade level in reading, 2.4 grade level in writing and 1.8 grade level in math.  The IEP recommended special education in reading, writing and math.  (Tr. at 226-34.)

In her 4th grade IEP, S.S. was noted to be weak in math, requiring specialized instruction in the special education classroom, but to otherwise be capable of participating in the regular classroom.  (Tr. at 207-16.)  S.S.'s 5th grade IEP stated that she turned in her homework and assignments, and performed at or above grade level in the areas of reading and factual knowledge but below grade level in math and writing.  Under the combined category of basic skills, she scored in the average range.  (Tr. at 193-98.)

S.S.'s 6th grade IEP indicated that she demonstrated a good attitude but performed at a 3.5 grade level in reading and 4th grade level in math.  In other academic areas such as writing, science and social studies she appeared to be functioning at a level comparable to her peers.  (Tr. at 115.)  The report indicated that with minimal support, modification of work and extra assistance she should be able to function successfully in the regular education classroom.  (Tr. at 115.)

S.S.'s 7th grade IEP stated that she was very polite, got along well with others and demonstrated a good attitude, but her parents recommended special education help.  (Tr. at

5

102.) The IEP indicated that she was reading at a 4.3 grade level and would receive specialized instruction support in math, writing and reading. (Tr. at 102, 106, 109.) According to achievement testing, she scored in the low range in basic skills, average in reading, low in writing and math, and low in factual knowledge. (Tr. at 111.)

### 2. Report Cards

S.S.'s 4th grade report card reflected a range of grade, from B's to D's. (Tr. at 222.) Her teacher commented that she made "some progress" and met the requirements for promotion to 5th grade, but her behavior had "gotten a little out of control." (Tr. at 223.) According to her 5th grade report card, S.S. received grades ranging from A's to U's. She was noted to be above grade level in reading, below grade level in math, and vacillated between the two in language skills. (Tr. at 183-85.) S.S.'s 6th grade report card also recorded a range of grades, from A's to D's, with a GPA of 2.333/4.0. (Tr. at 181-82.) Her first period 8th grade report card recorded five B's, one D and one U. In the latter two classes, S.S.'s teachers noted that she did not submit her work. (Tr. at 98.)

### 3. Teacher Questionnaires

On February 16, 2005, S.S.'s 6th grade special education and regular education teachers completed a questionnaire, evaluating the six domains. Under the domain of acquiring/using information, they wrote that S.S. had an "obvious problem" in providing organized oral explanations, but slight or no problems in the other nine listed areas. (Tr. at 153.) Under the domain of attending/completing tasks, the teachers indicated that S.S. had a "serious problem" in organizing materials; an "obvious problem" in completing assignments; and slight or no problems in the other eleven listed areas. (Tr. at 154.) They noted no

6

problems in the other four domains. (Tr. at 155-58.)

On May 8, 2006, S.S.'s 7th grade special education teacher, Mr. Oelerich, also completed a questionnaire evaluating the six domains. Under the domain of acquiring/using information, he indicated that S.S. had a "serious problem" in comprehending and doing math problems, providing organized oral explanations, recalling and applying previously learned material, and applying problem-solving skills; an "obvious problem" in learning new material; and slight or no problems in the other five listed areas. He further wrote that S.S. "needs to try harder!" (Tr. at 131.) Under the domain of attending/completing tasks, Oelerich indicated that S.S. had a "serious problem" in organizing materials; an "obvious problem" in carrying out multi-step instructions, completing assignments and completing work accurately; and slight or no problems in the other nine listed areas. (Tr. at 132.) He found no problems in the other four domains. (Tr. at 133-36.)

On December 11, 2006, S.S.'s 8th grade teacher, Nancy Grochowski, completed an identical questionnaire. (Tr. at 145.) Under the domain of acquiring/using information, she indicated that S.S. had obvious problems in seven areas, and slight problems in three. (Tr. at 139). Under the domain of attending/completing tasks, Grochowski wrote that S.S. had an obvious problems in seven areas, and slight or no problems in the other six listed areas. (Tr. at 140.) Like Oelerich, she found no problems in the other four domains. (Tr. at 141-44.)

**D.    Treatment Records and Reports**

In December 2006 and January 2007, S.S. saw psychologist Lawrence Cardassi, Ph.D. (Tr. at 236-38.) According to Dr. Cardassi's initial psychological assessment, S.S. presented with behavioral problems, depression and a learning disorder. S.S. appeared oriented, with intact memory, judgment and insight, but with moderately impaired attention and concentration.

7

(Tr. at 239-40.) In a February 3, 2007 letter to plaintiff, Dr. Cardassi stated that according to his testing S.S. was "seriously under-functioning academically." (Tr. at 252.) In a February 7, 2007 report, Dr. Cardassi opined that S.S. experienced marked limitations in the domains of acquiring/using information and attending/completing tasks, with a less than marked limitation in health/physical well-being, and slight or no limitation in the other domains. In the additional comments section, Dr. Cardassi recommended that S.S. be further assessed to more definitively determine the severity of her depression. (Tr. at 242-49.)[1]

### E.    SSA Consultants

The SSA also arranged for S.S.'s claim to be evaluated by medical and psychological consultants, who reviewed the record and concluded that S.S. had severe impairments, which did not meet or equal a Listing. The consultants found a less than marked limitation in acquiring/using information and no limitation in the other domains. (Tr. at 163-68.)

### F.    ALJ's Decision

On April 25, 2007, the ALJ issued an unfavorable decision. The ALJ found that S.S. had not engaged in substantial gainful activity, and that she suffered from severe impairments – a learning disorder and depression. (Tr. at 17.) However, the ALJ concluded at step three that these impairments did not meet, equal or functionally equal a Listing. (Tr. at 17.)

Under the domains of acquiring/using information, attending/completing tasks, interacting/relating with others and caring for oneself, the ALJ found that S.S. experienced less than marked limitations. (Tr. at 19-22.) In so ruling, the ALJ noted that S.S. received special education assistance but demonstrated academic progress and generally had no behavior

---

[1] Medical records revealed no significant physical health problems. (Tr. at 148-52; 256-72.)

8

problems. She generally got along well with others and was able to interact with friends and care for her personal needs. The ALJ further noted that plaintiff had not been diagnosed with attention deficit disorder and took no medication to aid her attention; S.S. had received some counseling for depression but also took no medication for that condition. (Tr. at 21-22.) The ALJ rejected Dr. Cardassi's report and plaintiff's statements suggesting greater limitations because they were not supported by the objective medical evidence, the school records, and S.S.'s general level of daily activity and functioning. (Tr. at 19.) Finally, given her general good health and activity level, the ALJ found no limitation in the domains of moving about/manipulating objects and physical well-being. (Tr. at 22-23.)

The ALJ therefore concluded that S.S. was not disabled and denied the application. (Tr. at 23.) Plaintiff requested review by the Appeals Council (Tr. at 9), but the Council denied his request (Tr. at 4).

### III. DISCUSSION

Plaintiff argues that the ALJ erred in evaluating: (1) the credibility of the testimony, (2) the domain of acquiring/using information, and (3) the domain of attending/completing tasks. All three arguments share a common theme – that the ALJ failed to consider evidence contrary to her conclusions. I agree, and therefore reverse and remand for further proceedings.

As indicated above, judicial review of an ALJ's factual findings is deferential. The court may not re-weigh the evidence or substitute its judgment for that of the ALJ. E.g., Powers v. Apfel, 207 F.3d 431, 434 (7th Cir. 2000). But this does not mean that the court simply rubber-stamps the decision; the ALJ must sufficiently articulate her assessment of the evidence to assure the court that she considered the important evidence. Rohan, 98 F.3d at 971. Further, the ALJ may not simply select and discuss only that evidence which favors her ultimate

9

conclusion, ignoring that which suggests a contrary result. See, e.g., Smith v. Apfel, 231 F.3d 433, 438 (7th Cir. 2001); see also SSR 96-7p (stating that the ALJ must consider the entire record when evaluating credibility and provide specific reasons for her determination, supported by the evidence in the record).

In the present case, the ALJ relied significantly on school records, but she failed to consider significant evidence supporting S.S.'s claim. Specifically, while the ALJ mentioned the February 16, 2005, teacher questionnaire (Tr. at 17), she ignored the May 8, 2006 and December 11, 2006 questionnaires. The May 2006 form documented "serious problems" in the domains of acquiring/using information and attending/completing tasks (Tr. at 131-32), while the December 2006 form reported "obvious problems" in these areas (Tr. at 139-40). Courts have stressed the importance of such records in evaluating the domains. See, e.g., Cormier ex rel. Reed v. Astrue, No. CV 07-490, 2008 WL 3911170, at *11 (D. Ariz. Aug. 22, 2008) ("The ALJ should have . . . at least explained why he rejected Reed's teacher's opinions that Reed had serious and very serious limitations."); Lowery v. Barnhart, No. 05-1169, 2006 WL 4070293, at *4-5 (D. Kan. Apr. 26, 2006) (reversing where the ALJ failed to consider a teacher questionnaire regarding the domain of acquiring/using information); Baker ex rel. Baker v. Barnhart, 410 F. Supp. 2d 757, 768 (E.D. Wis. 2005) ("Because the question before the ALJ was [the child-claimant's] day-to-day functioning, the teacher's opinion was important."); Turner v. Barnhart, 377 F. Supp. 2d 1165, 1169 (M.D. Ala. 2005) (reversing where "the ALJ's opinion fails to mention the school records, and it lacks any indication that he knew either of their existence or his responsibility to discuss them"); Matthews v. Barnhart, 339 F. Supp. 2d 1286, 1291 (N.D. Ala. 2004) ("Teachers and school personnel know how the claimant is functioning on a day-to-day basis compared to other children of the same age who do not have

10

impairments."); see also Katchenago v. Astrue, No. 07-C-100, 2008 WL 2704896, at *4 (E.D. Wis. July 8, 2008) (awarding attorneys' fees where the court reversed based on, inter alia, the ALJ's "failure to discuss and explain his rejection of . . . a questionnaire completed by RJ's teacher regarding his limitations").

The Commissioner concedes that the ALJ skipped the 2006 questionnaires but argues that this evidence is actually consistent with and generally supports the ALJ's findings. I cannot agree. S.S.'s degree of limitation in the domains of acquiring/using information and attending/completing tasks is the key issue in this case, and the report from Mr. Oelerich in particular appears to support greater limitations in these areas. Ultimately, though, it is the ALJ's job to evaluate the evidence; it is not appropriate for the Commissioner's lawyers or the court to assume that the ALJ would view unmentioned evidence in a certain way. See Golembiewski v. Barnhart, 322 F.3d 912, 916 (7th Cir. 2003) ("[R]egardless of the requirements of Social Security Ruling 96-7p, general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); Gill v. Astrue, No. 07-1214, 2008 WL 940829, at *5 (D. Kan. Apr. 7, 2008) (remanding for consideration of unmentioned teacher questionnaire because "the court should not engage in the task of weighing evidence in the first instance"). Because these questionnaires lend support to plaintiff's claim of marked limitations in the first two domains, I cannot conclude that the ALJ's failure to discuss them was harmless.

The ALJ also cited some of S.S.'s IEP's and report cards, which indicated that S.S. made academic progress, including a promotion to the fifth grade, and received B's and C's in 6th grade. (Tr. at 17.) But other records, which the ALJ did not discuss, suggest that S.S. continued to slip farther behind her peers academically. For example, while S.S.'s third grade

11

IEP stated that she performed just below grade level in reading (Tr. at 229), her sixth grade IEP stated that she read at a 3.5 grade level (Tr. at 115). Likewise, her seventh grade IEP reflected a 4.0 grade level in math. (Tr. at 111.) Other records stated that S.S. "has a difficult time attending and can be easily distracted" (Tr. at 204) and required "specialized instruction in a small group setting" due to "academic delays" and "organizational problems" (Tr. at 102).

The Commissioner responds that the ALJ is not required to address every piece of evidence and notes that the school records show a wide discrepancy in plaintiff's academic abilities. The Commissioner is right. But weighing evidence and resolving conflicts is a job for the ALJ, not the court or the Commissioner's lawyers. Where, as here, significant evidence goes unmentioned, the court should remand for further proceedings. See Zblewski v. Schweiker, 732 F.2d 75, 79 (7th Cir. 1984) ("As the Third Circuit put it in Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981), when the ALJ fails to mention rejected evidence, 'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'"). Similarly, while the court must deferentially review an ALJ's credibility determination, the court need not defer to a determination "based on a misunderstanding or one-sided view of the evidence." Windus v. Barnhart, 345 F. Supp. 2d 928, 945 (E.D. Wis. 2004).[2]

---

[2]In finding that S.S. had a less than marked limitation in attending/completing tasks, the ALJ noted that S.S. had not been diagnosed with attention deficit disorder ("ADD") and took no medications to aid her attention. (Tr. at 22.) As plaintiff notes, a diagnoses of ADD is not required under 20 C.F.R. 416.926a(h). However, it is generally appropriate for an ALJ to note lack of treatment in analyzing the severity of an impairment, see, e.g., Powers, 207 F.3d at 435, so long as she also considers other relevant factors. In the present case, the ALJ listed this factor as just one of several reasons for finding a less than marked limitation in this domain.

12

## IV.  CONCLUSION

**THEREFORE, IT IS ORDERED** that the ALJ's decision is **REVERSED**, and this matter is **REMANDED** pursuant to § 405(g), sentence four, for further proceedings consistent with this decision.  The Clerk is directed to enter judgment in plaintiff's favor.

Dated at Milwaukee, Wisconsin this 15th day of September, 2008.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge